Lewis, Adm'r, v. St. L. & I. M. R. R. Co.

## M. D. Lewis, Public Adm'r in charge of estate of Edwin S. Mann, Appellant, vs. St. Louis & Iron Mountain Railroad Co., Respondent.

1. *Actions for injuries to the person not abated by death of plaintiff pending appeal in the Supreme Court, when.*—In suit for damages for injuries to the person, where judgment is for plaintiff below, but is reversed in the District Court—or court in General Term—and, pending the appeal in the Supreme Court, plaintiff dies, his death will not abate the suit. By the recovery in the lifetime of the injured party, his claim for damages becomes merged in the judgment, and the action of reversal by the intermediate tribunal does not destroy, but merely suspends, the judgment of the trial court, until final action by the court of last resort.

2. *Appeals—Judgment below, when merely suspended by.*—As a general rule, where a case goes up to the court of appeals, merely as an appellate court for correction of errors, and for adjudication on the question whether the judgment appealed from shall be affirmed, reversed or modified, and the court has no other powers, the appeal does not vacate but merely suspends the operation of the judgment.

3. *Railroad companies—Must use what precautions to keep works and track in proper repair—Measure of responsibility in case of neglect.*—It is the duty of railroad companies to keep their works and all portions of their track in such repair and so watched and tended as to insure the safety of all who may lawfully be upon them, whether passengers or servants or others. And if they fail to do so, they will be held liable for the consequences.

4. *Railroads—Knowledge of defects—Responsibility.*—Railroad companies are liable for all defects of which they have knowledge, or which, by the use of reasonable care and diligence, they might ascertain.

5. *Railroads—Defects in track and machinery—Doctrine of negligence of fellow servant does not apply to—Company liable on implied contract to keep them in order.*—Where the servant of a railroad corporation is injured by defects in the machinery or track of the company, the latter cannot defend on the plea that such defects resulted from the negligence of fellow servants. The agents of the road charged with the duty of supplying a safe track and sound machinery are not properly fellow servants, but represent the corporation itself. And it has been held, that mere knowledge of the defects on the part of the one injured, without additional testimony showing negligence, would not defeat his recovery. And the liability of the company rests upon the implied obligation of its contract with employees to use due care touching the condition of its road-bed and apparatus.

6. *Railroad, suit against for injuries caused by excavation—Duty of section foreman as to repair of road—His negligence that of the company.*—In suit for damages against a railroad company, for injuries to plaintiff caused by an excavation adjoining the track, *held* that it was the duty of the section foreman to keep the track in repair and to see that everything appertaining thereto was safe ; that, *quoad hoc*, he was the company ; that notice to him was notice to the company ; and his negligence the negligence of the company.

| | |
|---|---|
| 59 | 495 |
| 33a | 546 |
| 59 | 495 |
| 98 | 575 |
| 59 | 495 |
| 40a | 73 |
| 59 | 495 |
| 44a | 99 |
| 59 | 495 |
| 106 | 87 |
| 59 | 495 |
| 109 | 393 |
| 109 | 421 |
| 109 | 493 |
| 52a | 371 |
| 59 | 495 |
| 114 | 557 |
| 59 | 495 |
| 119 | 322 |
| 59 | 495 |
| 123 | 236 |
| 124 | 68 |
| 59 | 495 |
| 128 | 517 |
| 59 | 495 |
| 129 | 56 |
| 129 | 152 |
| 129 | 525 |
| 59 | 495 |
| 143 | 69 |
| 59 | 495 |
| 177 | ³310 |
| 59 | 495 |
| 171 | ¹82 |

*Appeal from St. Louis Circuit Court.*

*Everett Pattison,* for Appellant.

I. The cause does not abate on account of the death of appellant after appeal taken, judgment having been in his favor below.

*a.* When the plaintiff recovered judgment in the court below, the cause of action became merged in the judgment. (Kimbrough v. Mitchell, 1 Head, 539 ; 2 Bouv. Inst., 149 ; see also 15 Conn., 524.)

*b.* The death of the plaintiff after final judgment does not abate the suit ; execution may issue. (Wil. Ex., *766.) And if a plaintiff in error dies after errors assigned, the writ does not abate. (Wil. Ex., *1710 ; Carroll vs. Bowie, 7 Gill, [Md.], 34.)

*c.* And the appeal taken by the defendant to the general term of the Circuit Court, did not vacate the judgment ; it only suspended it. The cases that hold that a valid appeal vacates the judgment, apply only to cases where there is to be a trial *de novo* in the appellate court, as in appeals in chancery cases, or appeals from courts of inferior jurisdiction. (Rogers vs. Hatch, 8 Nev., 40 ; Curtis vs. Beardsley, 15 Conn., 518.)

We call especial attention to the wording of the statute on the subject of abatement. The statute providing for the revival of suits before judgment, contains the provision that the suit shall not abate "if the cause of action survive or continue." (Wagn. Stat., p. 1049, § 1.) But these words are not found in the section providing for the revival of suits in the Supreme Court. (Wagn. Stat., 1067, § 26.) Sec. 30 applies only to the course of proceeding—the method of bringing in the parties.

*d.* The reversal of the judgment by the General Term did not absolutely vacate the judgment, plaintiff having taken an appeal to the Supreme Court from the judgment of reversal. (Wil. Ex., *762 ; see also Marguard vs. Rieter, 30 Mo., 248.) And a reversal of the General Term, by the Supreme Court, would restore the judgment of the court below.

(Perry vs. Alford, 5 Mo., 502 ; Strouse vs. Drennan, 41 Mo., 294.)

II. Respondent cannot complain of the refusal of its instructions.

Those given declared the law very favorably for the defendant below.

Indeed we think that the instructions which told the jury that, if the negligence of a co-employee caused the accident, defendant was not liable, were erroneous. (See Cayzer vs. Taylor, 10 Gray, 274 ; Harper vs. Ind. & St. L. R. Co., 47 Mo., 579 ; Brothers vs. Carter, 52 Mo., 375.)

A corporation is liable to an employee for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed. (Flike vs. Boston and Albany Railroad Company, 53 N. Y., 549 ; and see cases there cited.) Wright, although employed by the company, nevertheless, in respect to his duties as section foreman, stood in the place of the company and his neglect was that of the company.

All, from the highest officer to the lowest laborer, are in one sense fellow servants, and as a corporation can act only through its officers and employees, it follows, under those instructions, that it may mangle and kill its employees *ad libitum*, and there can be no liability. We do not think that this court will recognize any such principle. (See in this connection, Laning vs. N. Y. C. R. R., 49 N. Y., 529 ; C & N. W. R. R. Co. vs. Sweet, 45 Ill., 197 ; C. & N. W. R. R. Co. vs. Jackson, 55 Ill., 492 ; Harper vs. Ind. & St. L. R. R. Co., 47 Mo., 579.)

III. The first instruction given for plaintiff is proper. (Gibson vs. Pac. R. R. Co., 46 Mo., 163 ; Snow vs. Housatonic R. R. Co., 8 Allen, 441 ; Devitt vs. Pac. R. R., 50 Mo., 302.)

32—VOL. LIX.

*Dryden & Dryden*, for Respondent.

This case is not that of failure to furnish safe machinery and apparatus, as in Gibson vs. Pac. R. R. Co. (46 Mo., 173.) Here respondent did its duty in constructing road bed, etc., and the accident was due to the digging of a hole two or three days previous by a stranger and trespasser.

Respondent employed, as a section foreman, one Wright, whose duty it was to keep the road in good repair at the "ore switch." It is not claimed that he was incompetent or the company negligent in employing or retaining him; nor that the existence of the defect was brought to the knowledge of any controlling officer of the road. Under such state of facts respondent is not liable. (Hard vs. Vt. Cent. R. R., 32 Vt., 473; Warner vs. Erie R. R., 39 N. Y., 468; Wilson vs. Merry, 1 Scotch D. D. App. [H. L.], 328.)

A broader doctrine than this would force the company to guaranty not merely the competency but the fidelity of co-employees. Wright was not incompetent, but merely negligent. Plaintiff, when he entered the company's service, took all risks arising from such negligence. (McDermott vs. Pac. R. R. Co., 30 Mo., 115; Rohback vs. Pac. R. R. Co., 43 Mo., 187; Brothers vs. Cartter, 52 Mo., 372; Farwell vs. Boston & Worcester R. R. Co., 4 Metc., 49; Torrent vs. Webb, 18 C. B. [68 E. O. L.], 795; Priestly vs. Fowler, 3 M. & W., 1; Wilson vs. Merry, 1 Scotch & D. App. [H. L.] [1868], 328; Mobile & Ohio R. R. Co. vs. Thomas, 42 Ala., 672.) In Snow vs. Housatonic R. R. Co. (8 Allen, 441,) relied on by appellant, the defect in the track was known for months, and the questions were raised whether the track repairer was competent, and whether he was a fellow servant of Snow—the road being in the possession of two different companies.

Instruction No. 2 asked by defendant should have been given. (See Snow vs. Housatonic R. R., *supra;* Brothers vs. Cartter, *supra;* Warner vs. Erie R. R., *supra;* Hard vs. Vt. Cent. R. R., *supra;* Wilson vs. Merry, *supra*.)

Instruction No. 4 should have been given for defendant. Plaintiff knew of the danger. (Dewitt vs. Pac. R. R., *supra;* Barton vs. I. M. R. R., 52 Mo., 253.)

Instruction No. 6 should also have been given for defendant. Wright was, in legal contemplation, a fellow servant. (Farwell vs. Boston & Worc. R. R., 4 Metc., 49; Dewitt vs. Pac. R. R., *supra;* Barton vs. I. M. R. R. *supra.*

Plaintiff's instruction No. 1 should have been refused. The evidence does not warrant it. There is no proof that respondent did know or could, with reasonable diligence, have known of the existence of the hole.

The death of Mann should abate the suit. (Wagn. Stat., 1049, § 1; 1062, § 30.) The action died with him. (Wagn. Stat., 87, § 30.) The reversal of the Special by the General Term, placed the case where it stood before the original judgment. (Carson vs. Leggett, 34 Mo., 364; Brown vs. Hann. & St. Jo. R. R., 43 Mo. 294.) It destroyed the original judgment. (Perry vs. Alford, 5 Mo., 502; Strouse vs. Drennan, 41 Mo., 294 Campbell vs. Howard, 5 Mass., 375.)

WAGNER, Judge, delivered the opinion of the court.

This was an action brought by the intestate who was the plaintiff below, to recover damages for the loss of a leg while serving as brakesman on defendant's road.

The petition alleged that on the 15th day of June, 1869, plaintiff was injured while in the discharge of his duties as brakesman in coupling cars, without carelessness or negligence on his part, through the negligence, carelessness and want of proper care and prudence of defendant in the management of its railroad, in this: that it permitted deep and dangerous holes to remain open in the ground and road bed, between its side track and the main track, into which plaintiff stepped, whereby he was thrown downward, his foot was thrown upon the track and run over, and crushed by the wheel of the car. It was further alleged, that the existence of the hole into which the plaintiff stepped was not known to him, but that the hole was left by defendant after it was notified of its existence, and knew, or ought to have known,

that it was unsafe and dangerous to its employees; that as a result of the injury he twice suffered amputation—once between the ankle and knee, and afterwards between the knee and the hip. Wherefore damages were prayed.

The answer denied negligence, carelessness or want of care on the part of defendant, in permitting deep and dangerous holes in the ground and the road bed, between the main and side track; admitted that plaintiff received injuries from having his foot run over by the cars, but denied that the same was caused by the negligence of the defendant, and averred that it was occasioned in part by an unforeseen and inevitable casualty, and in part by the carelessness and want of prudence of the plaintiff directly contributing thereto.

The answer also denied that defendant's road bed was in a dangerous condition, or that it permitted deep and dangerous holes therein, but stated that, whatever its condition, it was well known to plaintiff at and before the happening of the injury; denied that there was any hole in the ground near the side track of its road, or that it had any notice of any hole being there, before the happening of the injury, and denied that the plaintiff stepped into any hole.

The evidence, in brief, showed, that about daylight, on the morning of the 15th of June, 1869, the train, composed of freight cars, and called the dispatch train, arrived at the "ore switch," a switch or side track on defendant's road, between St. Louis and Carondelet. The train was in charge of T. J. True, as conductor, and plaintiff and one Jones were the brakemen. On arriving at the "ore switch," the train was cut in two. One half was backed down on the side track, where plaintiff stood ready to couple the cars to some cars that were standing on the side track. Between the side track and the main track, a hole had been dug, about two or two and a half feet from the side track. There were loose ties lying about, and some of these ties laid over and partially concealed the hole. When the cars came together plaintiff did the coupling, stepped along the cars as they moved, stepping partly forward and partly out towards the rail, until he reached the

rail, when he took a step sideways to get clear of the cars; as he made this step, his right foot went into the hole, which caused him to fall, and in falling his left foot was caught by the wheel of the car, which ran over it and crushed it. At the time of the accident it was not sufficiently light to see very distinctly.

The evidence tended to show that the hole had been dug by steamboatmen, for the purpose of placing posts in it to tie their boats at the ore landing; that it had been there some three or four days, and that Jones, the other brakeman, had seen it two or three days before the accident, and complained of it to the section foreman. Plaintiff testified that he did not know of the existence of the hole until he stepped into it, and that he used great caution and prudence, though there was evidence going to show that he had been engaged in working on the switch every day since the hole had been dug.

At the instance of the plaintiff, the court gave two instructions; the first was as follows:

"If the jury are satisfied from the evidence in this case that there was a dangerous hole between the main track and the side track of defendant's road, at a place where plaintiff was required or would be likely to step, in the discharge of his duties, whereby the risk of injury to plaintiff was increased, and that said hole was allowed to remain there after defendant knew of its existence, or might by the exercise of reasonable care and diligence have known thereof; and if they further find that plaintiff received injuries in consequence of such hole having remained there after defendant knew or might have known of its existence, and that plaintiff was exercising ordinary care and prudence at the time he received such injury, and did not know of the existence of said hole, then defendant is liable for such injuries."

The second instruction relates to the measure of damages, and is not objected to here.

For the defendant, the court declared the law to be:

"If the jury believe from the evidence, that plaintiff was daily in the habit of passing along and over that part of the

track of the defendant's road, where the hole spoken of by the witnesses was situated, and that said hole was plainly visible to a man in the possession of his senses and faculties, the plaintiff cannot recover in this action, although the jury should believe that the plaintiff fell into said hole, and in consequence was run over and hurt by the cars."

" If the plaintiff knew of the exposure to danger in coupling cars upon the " ore switch " of the defendant, because of the hole or holes alleged to have been dug in the road-bed of said switch, and the danger of stepping into said hole or holes, and with such knowledge consented to and did continue to remain in the service of the defendant as brakeman, and was thereafter thrown down by means of stepping into one of said holes, and was injured and crippled as in the petition charged, then the plaintiff cannot recover from the defendant for any negligence in permitting said holes to remain in said road-bed."

" In determining the question of carelessness and negligence on the part of the plaintiff, the jury will take into consideration all the facts and circumstances proved, including the condition of the track between the " ore switch " and the main track, the quality and quantity of light at the time the plaintiff attempted to couple the cars, and if, from all the evidence, they believe that negligence or want of ordinary care and prudence on the part of plaintiff directly contributed to the happening of the accident which caused the injuries sued for, they will find for the defendant."

And of its own motion the court gave this additional declaration :

" The court instructs the jury that the plaintiff, as a servant of defendant, assumed all the risks attending the employment he undertook. If, therefore, the jury believe from the evidence, that the plaintiff was injured by and through the negligence of his fellow servant in the same general employment, the plaintiff cannot recover.

Defendant asked for six additional instructions, which the court refused. The jury found a verdict for the plaintiff,

upon which judgment was rendered. This was reversed by the court at general term, and the plaintiff appealed.

During the pendency of the appeal in this court, the plaintiff died, and his administrator now comes in and asks to be made a party, and this is resisted on the ground that the suit abated on the death of the plaintiff. This preliminary question must therefore be first disposed of.

It is insisted that the action died with the person, and as the judgment in his favor was reversed, it was thereby entirely destroyed or annihilated, and nothing was left but a simple right to recover, which would abate at his decease. Had the reversal been in a court of last resort, where it would have been necessary to have had a new trial on the merits, this effect might have been ascribed to it. The judgment in that event would not only have been annulled, but all the subsequent proceedings would have been on the original cause of action. But now if the judgment of the intermediate court —the General Term—is reversed, the effect is to restore the judgment of the trial court. (Rankin vs. Perry, Adm'r, 5 Mo., 501; Strouse vs. Drennan, 41 Mo., 289.)

The operation of the judgment is suspended, but new life and validity may be imparted to it. Where in a transfer of a suit from the Circuit Court to the Supreme Court, the plaintiff died after it was removed to the latter court, a motion to abate the suit was denied, and it was revived in the name of the personal representatives. The court said that by the recovery in the lifetime of the injured party, the claim for damages was merged in the judgment, and became a debt, with which the personal representative was chargeable; that there was a difference between a simple appeal and an appeal in the nature of a writ of error, the latter merely suspended the judgment of the inferior court, but did not annul it. (Kimbrough vs. Mitchell, 1 Head, 539.)

The correct doctrine seems to be, that where an appeal is in the nature of a writ of error, and only carries up the case to the court of appeals, as an appellate court for the correction of errors that may have intervened on the trial of the case below, and for its adjudication upon the question whether

the judgment appealed from should be affirmed, reversed or modified, and the court has no other than appellate powers, to affirm, reverse or modify, then such appeal does not vacate but merely suspends the operation of the judgment.

The instruction given for the plaintiff is the material question complained of as error in this cause. It is contended that it was wrong, because it told the jury that defendant was responsible if the risk of injury to plaintiff was increased by the hole being there, and it was allowed to remain after defendant knew of its existence, or might by the exercise of reasonable care and diligence have known thereof, and that the injury was received in consequence of the hole remaining after defendant knew, or might have known, of its existence. The instruction, however, declares at the same time, that it was necessary that the plaintiff should have exercised ordinary care and prudence in order to enable him to recover.

The rule has long been established, and it is founded in justice and reason, that it is the duty of railroad companies to keep their road and works, and all portions of the track, in such repair and so watched and tended, as to insure the safety of all who may lawfully be upon them, whether passengers or servants or others. They are bound to furnish a safe road, and sufficient and safe machinery or cars. The legal implication is, that the roads will have and keep a safe track, and adopt suitable instruments and means with which to carry on their business. They can provide all these by the use of the requisite care and foresight, and if they fail to do so, they are guilty of a breach of duty, and are liable for the consequences. (Gibson vs. Pac. R. R. Co., 46 Mo., 163; Chicago & N. W. R. R. Co. vs. Sweet, 45 Ill., 197.)

Under this rule it is held, that the companies are liable for the existence of all defects, which they knew, or by reasonable care and diligence might have known. (Gibson vs. Pac. R. R. Co., *supra;* Ryan vs. Fowler, 24 N. Y., 410; Noyes vs. Smith, 28 Verm., 59; Hayden vs. Smithfield Manf. Co., 29 Conn., 548.)

In the case of Snow vs. Housatonic R. R. Co., (8 Allen, 441) it was decided that a railroad company might be held

liable for an injury to one of its servants, caused by a want of repair in the road bed.

There the plaintiff was injured in coupling cars, and in coming out from between the cars, he stepped into a hole which was permitted to remain on the side of the track, and the train caught his other foot and it was crushed, and the amputation of a leg became necessary: The plaintiff himself swore that he had known of the existence of the hole for some time, and had complained of it to the repairer of the track, and it was urged in the argument for the defendant that the omission to repair the defect which occasioned the injury, was the result of the negligence of the person whose duty it was to see that the track was kept in a safe and proper condition, and that the accident was therefore caused by the carelessness of a fellow servant. But this position was denied by the whole court. Bigelow, C. J., in writing the unanimous opinion, said : "But this argument leaves out of sight the real ground on which the liability of the defendants rests. If the argument is well founded, then it would follow that as a corporation can only act by agents or servants, it would escape all responsibility for every species of injury caused by the defective machinery and apparatus, or badly constructed tracks, or insufficient bridges and other similar causes. So an individual could avail himself of a similar immunity if he conducted his business exclusively by agents or servants. But the rule of law does not lead to any such absurd result. The liability of the master or employer in such cases is founded, as has already been said, on the implied obligation of his contract with those whom he employs in his service. This requires him to use due care in supplying and maintaining suitable instrumentalities for the performance of the work or duty which he requires of them, and renders him liable for damages occasioned by a neglect or omission to fulfill this obligation, whether it arises from his own want of care, or that of his agents to whom he intrusts the duty."

The same principle has recently been reiterated in the same court, (Ford vs. Fitchburg Railroad Co., 110 Mass., 240) and the doctrine extended even further. The plaintiff was an

engineer engaged in running a locomotive engine, and was injured by an explosion of his engine, which was old and out of repair. It was objected to the maintenance of the action, that the want of repair of the engine was caused by the negligence of a fellow servant, but the court overruled the objection, and in the opinion by Colt, Judge, it was said : "The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow servant, does not excuse the employer from the exercise of ordinary care in supplying and maintaining suitable instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged where the employer is a corporation by officers and agents, does not relieve the corporation from the obligation. The agents who are charged with the duty of supplying safe machinery are not in the true sense of the rule relied on, to be regarded as fellow servants of those, who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them even when the same person renders service by turns in each, as the convenience of the employer may require it."

The same principle is decided in a recent case in the New York Court of Appeals, (Flike vs. Boston and Albany R. R. Co., 53 N. Y., 549,) where it is held that a corporation is liable to an employee for negligence or want of proper care in respect to such acts and duties, as it is required to perform as master or principal, without regard to the rank or title of the agent entrusted with their performance, and that as to such acts the agent occupies the place of the corporation, and the latter is deemed present and consequently liable for the manner in which they are performed.

Mr. Redfield, in the last edition of his Treatise on Railways, expresses the opinion that corporations should always be re-

garded as present in all acts performed by their agents within the range of their employment. (Redf. Railw., 5th ed. p. 538, § 7.)

It was the duty of the section foreman to keep the track in repair and see that every thing was safe. He was notified of the existence of the hole, and complaint was made to him about it, but he negligently omitted to act and failed to remedy the defect. Notice to him was notice to the company, and his negligence was the company's negligence. (Harper v. Indianapolis & St. Louis R. R. Co., 47 Mo., 567; Brothers v. Cartter, 52 Mo., 372.)

The same doctrine prevails in England as to the liability of the master. In Holmes vs. Clark (6 Hurl. & N., 349), it was held that where machinery was required to be protected and kept in a certain way, and it was permitted to get in an unsafe condition, and complaint was made by a servant or employee during the period it was so out of repair, the master took upon himself the risk, and was responsible to a servant for any accident that happened. Assuming then that the jury found the facts to exist as stated in the instruction, the conclusion of law predicated thereon was more favorable to the defendant than many of the best adjudged cases would warrant.

Under the first instruction given for the defendant, it is evident that the jury must have found that the hole was not so plainly visible that the plaintiff must have known of it by using his senses and faculties; and this finding is sustained by the evidence, as it is shown that old ties were allowed to accumulate and remain there and partially cover up the hole. The second instruction precludes a recovery if the plaintiff knew of the danger and exposure of coupling the cars because of the hole being dug, and the verdict negatives any knowledge on his part. The next permits the jury to take into consideration all the facts and circumstances existing at the time, and surrounding the event, to determine whether the plaintiff was guilty of carelessness or negligence, or whether he contributed to the happening of the accident. Under these instructions the jury must have found that plaintiff, by

his negligence, did not contribute to the injury, and also, that he did not know that the hole was there, and that it was not so plainly visible that it was carelessness to overlook it.

This was going a great deal further than some of the cases require.

In Filke v. Boston & Albany R. R. Co., *supra*, the plaintiff knew there was a deficiency of brakeman, and in Snow v. Housatonic Railroad, *ubi supra*, the plaintiff was well aware that the hole which caused the injury existed, and yet in both cases the courts held that a recovery was proper, on the ground that it was the duty of the companies to furnish the necessary number of hands, and to keep the track safe and in good order, and that a failure to do either, was a violation of their contract with their servants or employees.

The instruction given by the court told the jury that the plaintiff, as a servant of the defendant, assumed all the risks attending the employment he undertook. If, therefore, they believed from the evidence that he was injured by and through the negligence of his fellow servant in the same general employment he could not recover.

There is an admittedly correct abstract proposition embodied in this instruction, but I doubt greatly whether it was correctly applied.

It is true in one sense, the section foreman whose duty it was to superintend the track and keep it clear and safe, was a fellow servant, as all are to a certain extent fellow servants who are engaged in the same business or enterprise ; but he represented the company in the line of his duty—he was the company in that regard—and his negligence was the company's negligence in a matter in which it owed a duty and obligation to its servants. If a mistake was committed, it was a mistake in favor of the defendant.

The instructions given covered the whole case, and were directed to every issue that could arise therein.

It is unnecessary to enter into an examination of those refused. Some of them had already been given in substance, and the others were incorrect.

The judgment at general term should be reversed, and that at special term affirmed.

Judges Vories, Napton and Sherwood concur. Judge Hough expresses no opinion.