Barclay, J.
( dissenting). — This case is remarkable in several respects. It has had four hearings since it came into the court. First, the circuit judgment in favor of plaintiff was affirmed, all the judges of the first division concurring (24 S. W. Rep. 746). On motion for rehearing, the cause was transferred to court in banc where the judgment was again affirmed (28 S. W. Rep. 753), all concurring except Judges Gantt and Sherwood. Since then there have been two more hearings by the court in banc. On each occasion a judgment of reversal has been rendered, for the reasons given by our learned associate, Judge Macearlane (28 S. W. Rep. 979). We have always dissented from such a result, and dissent again as the case comes to its close.
*524 The suit is remarkable from another point of view. It is the first judgment in many years, pronounced by a majority of this court, which seems to undermine the important proposition, in the modern Missouri , law of master and servant, that the duty to direct the work is a personal duty of the master.
In applying the British rule exempting the master from liability to one servant for negligence of another engaged in the same work, the supreme court has often declared that certain duties are personal to the master, and that all persons, set by the master to perform those duties, represented him, irrespective of their rank or association in the service.
The duty to use care to provide reasonably safe appliances and machinery for the work has been held a personal duty, in many decisions of which we mention only two, as types of others. Hall v. Railroad (1881) 74 Mo. 298; Coontz v. Railroad (1894) 121 Mo. 652.
Another personal duty is the duty of direction, according to former decisions, referred to further along.
A railroad can not be safely managed without regulations to govern the action of the bodies of men required to carry on its business. Hence it has been often held (before this case came into the court) that it is the master’s personal duty to be careful to prescribe and enforce reasonable regulations or rules, and also to use ordinary! care in directing the work through foremen and others intrusted with the master’s duty of command.
From the' application of these principles in this state it has resulted that where one servant has been injured by negligence of another, placed over him to direct his work, the superior (in so far as he exercised the master’s duty of direction) has been held no fellow servant of the injured party.
*525 That holding has distinguished the law of Missouri from that of some other states, where superior servants are held to be fellow servants of those, placed under their control, even when the former stand in the master’s place as to the latter.
A part of the duty of direction requires ordinary care in giving necessary orders for the business. An order must reach the employee who is to follow it before it can be justly said to become an order for him. In the act of delivering or communicating an order the duty to exercise care rests upon the master. Those whom he may delegate to perform that duty stand in his place, just as all employees do in respect of the duty of maintaining reasonably safe and sufficient machinery used in the master’s service.
These principles apply to the facts now before us.
There is positive proof that for years the practice prevailed to deliver written or telegraphic orders to the section foremen (while engaged at work along the line) through the hands of employees on trains passing the points where the foremen were working. This practice was so general, and had been so long continued, that it might fairly be found that the master was chargeable with knowledge of it. Barry v. Railroad (1889), 98 Mo. 62 (11 S.W. Rep. 308). The proof, however, goes further than that. It shows that the practice was part of the method or system adopted by the road master himself for imparting orders to the subordinate foremen under his direction.
This system of communicating with the foremen did not, however, include the practice of tying coal or dangerous substances to the orders. The usual practice was, as the train approached the man for whom the paper message was intended, to wave the paper in the air to attract his attention, and then to drop the paper as the train passed him. Sometimes the paper *526 was tied by a string to a stick to prevent its being blown away. But on no occasion before (according to plaintiff’s account) had a paper order ever' been delivered, tied fast to a hard substance, such as the piece of coal on the occasion out of which this action grows.
The question is, on these facts, whether the personal duty to give orders includes the duty to use reasonable care in delivering the orders to the person for whom they are intended. We answer emphatically, but with due respect, that it is.
It matters not whether the fireman who threw the order be considered, as belonging in the transportation, or in the construction, department of the railroad service. ■ The roadmaster himself in sending the order was^a mere mouthpiece or agency of the company, or, in this case, of the receivers.
Anyone to whom the duty of delivery is assigned represents the master in communicating the order. This certainly must be so, if the duty to direct the work, and in so doing to give orders, is really held to be a personal duty of the master.
The fireman and the plaintiff (as section foreman) were, no doubt, cooperating in delivering the message and in receiving it. But it does not follow from that fact that the master is not responsible for the act of either. That depends on the nature of the act done by each. If the act now in question (namely, the delivery of the message) was one which devolved on the master, as such, to perform, then the master is liable for carelessness in the delivery as he would be for damage arising from the nondelivery of the order.
Yet four of our colleagues hold that in this case the employer or master was not negligent, and that negligence in the delivery of an order is negligence of a fellow servant. The line of reasoning followed to reach *527 that result, if consistently applied, would place our law in regard to master and servant in the condition indicated by the case of McDermott v. Railroad (1860), 30 Mo. 115, in which the chief engineer of the railroad and every employee of lesser rank were held fellow servants, and the company was, therefore, held not liable for injury to a brakeman at the fall of the Gasconade bridge, caused by its defective construction.
But such an application of the rule in regard to fellow servants was discarded by the judgments in Gibson v. Railroad (1870), 46 Mo. 163, and Lewis v. Railroad (1875), 59 Mo. 495, as the learned judge who wrote the McDermott case plainly conceded in Long v. Railroad (1877), 65 Mo. 225.
The same venerable arguments used in the McDermott case, and repeated in the case at bar, would relieve the master of liability for negligence in respect of maintaining reasonably safe machinery, just as he is exonerated in this case from responsibility for negligence in the direction of the work. Eor if the master’s duty is performed by simply formulating orders, and no duty to use care in delivering them exists, why does the master not satisfy the law by merely providing sound appliances, without being liable for negligence inputting them together into the great plant which constitutes a railway line? Yet this court has often held that the humblest laborer who . drives a spike in the track to keep a rail in its' place is in that act performing part of a personal duty of the master, and that the master is liable, on a proper showing, if that track is defectively constructed. Lewis v. Railroad (1875), 59 Mo. 495; Henry v. Railroad (1891), 109 Mo. 488 (19 S. W. Rep. 239); Swadley v. Railroad (1893); 118 Mo. 268 (24 S. W. Rep. 140).
In the Lewis case (in which a brakeman was injured by stepping into a hole by the side of the track, *528 in consequence of negligence on the part of the section men in the care of the roadbed) the theory of personal duty of the master was stated as follows:
“It is true, in one sense, the section foreman whose duty it was to superintend the track and keep it clear and safe, was a fellow servant, as all are to a certain extent fellow servants who are engaged in the same business or enterprise; but he represented the company in the line of his duty — he was the company in that regard — and his negligence was the company’s negligence in a matter in which it owed a duty and obligation to its servants.” 59 Mo. 508.
So say we in the present case. If it was the personal duty of defendants to give orders to the plaintiff, as section foreman, it matters not what servant the company or the receivers selected to perform that duty. In delivering the order he was doing the act of the masters.
But our four learned colleagues now repudiate this theory, by the statement that “the service required of the fireman was that of a servant, which any messenger could have performed; and the manner of its delivery did not pertain to the duty the receivers owed to plaintiff. They owed him the duty only of using reasonable care to select a competent and careful messenger,” etc. This means, in substance, that if the orders for the work afe in themselves correct, no obligation of care in delivering them (to the workmen for whom they are prepared) rests upon the master.
This idea of the law of master and servant prevails in some states, but it has been some years since it received approval by a majority of this court. On the contrary it has been frequently held, of late, that the negligent acts of subordinates were the acts of the master, in so far as those acts were a manifestation of, and referable to, the master’s authority to direct the work in *529 hand. Those exercising the power of direction have been held to stand in the master’s place as to those under their control, in so far as the former were authorized to perform any duty of the master toward their subordinates. These principles have been distinctly declared in Stephens v. Railroad (1888), 96 Mo. 207 (9 S. W. Rep. 589); Miller v. Railroad (1891), 109 Mo. 350 (19 S. W. Rep. 58); and in Russ v. Railroad (1892), 112 Mo. 45 (20 S. W. Rep. 472) — not to mention other recent cases.
Now we are told that it is no part of the master’s duty to use reasonable care in transmitting an order to a section foreman to whom the master is bound to give proper orders. To quote the precise terms of the ruling: “The injury did not result from the nature of the message, or from a failure to transmit it.”
Why, let us ask, is the master liable for “a failure to transmit it”? If the delivery is not part of the master’s personal duty, and the order is, in itself, correct, whence springs any liability for the failure to transmit? Nondelivery would be the act of a mere servant as fully as negligent delivery (of which complaint is made in the present case). Yet our brethren intimate that for the former the master is liable; but that he is not liable for the latter. Why this distinction? We confess that it seems to us almost too fragile to discuss. It partakes somewhat of the nature of the distinction on which the New York judgment of Crispin v. Babbitt (1880), 81 N. Y. 516, is founded, from which our brother Maoearlane has approvingly quoted.
In that case a general manager, in full charge of iron works, started an engine, while plaintiff with others was lifting the fly wheel from it. A majority of the court of appeals held that, though the manager was a vice principal, as to superintending the establishment, he was merely a fellow servant of plaintiff when he *530 undertook to start the engine; and that, consequently, the master was not liable for his act. It is not surprising that three of the seven judges of the court dissented from that judgment.
If the act which the master’s representative (the manager) performed in that case was one which fell within his authority to direct and control, what difference, in principle, could there be (with reference to the liability of the master) whether the manager performed the act himself or directed another to perform it? In either case the act came within his directing power. He was still the manager when he started the engine.
According to our learned friendss in the case in hand, an order, good in itself, if started toward an employee, fulfills the duty of the master, if it reaches him in any way.
The master, according to this doctrine, is not bound to cause the order to be carefully transmitted. His agent to deliver it may tie the order to a piece of coal, and hurl it at the employee to whom it is directed, and put out his eye in delivering the order, without liability on the part of the master.
To such a declaration of law our most emphatic and earnest protest is entered.
It is, with due respect, inconsistent to say that it is a personal duty of the master to use care in directing the enterprise he conducts, and then to add that he is not bound to reasonable care to see that the order (which the employee, needs for his direction) reaches the latter. The necessary order for the work is no order at all (as to the person who is to act upon it) until he is apprised of it.
Negligence in giving the order is no different in principle from negligence in the order itself. In either case there is a breach of the duty to use reasonable care in directing the work.
*531 in Smith v. Railroad (1887), 92 Mo. 359 (4 S. W. Rep. 129), the defendant was held liable for a negligent verbal order by a train dispatcher to a locomotive engineer,, although the printed rules of the company forbade the movement of the engine without written orders. In that case it was said that “when he [the train dispatcher] determined that he could not give written orders, it was the determination of the company, and when he gave the orders verbally, as he did to meet the emergency, it was the company speaking.” 92 Mo. 372.
Whether the negligence be in the order itself (as in the Smith case, just mentioned, and in Hunn v. Railroad (1889), 78 Mich. 513, 44 N. W. Rep. 502), or in the omission to communicate a necessary order (as in Chicago, etc., R. R. Co. v. McLallen (1876), 84 Ill. 109; Sheehan v. Railroad (1883), 91 N. Y. 332; Darrigan v. Railroad (1884), 52 Conn. 285), or in communicating the necessary order carelessly (as in Madden’s Adm’r, v. Railroad (1886), 28 W. Va. 610, in East Tenn, etc., R. R. Co. v. DeArmond (1887), 86 Tenn. 73, and in the case at bar), the same duty is alike violated — the duty to use ordinary care in the direction <Jf the work, with reference to the safety of the employees engaged in performing it. Part of that duty requires the enforcement of needful rules (which are in their nature nothing more than standing orders) for the conduct of the business. Reagan v. Railroad (1887), 93 Mo. 348.
In that connection it has been held that it is not enough to establish a needed rule; it is also part of the master’s duty to bring it to the notice of the employees and to enforce it. Barry v. Railroad (1889), 98 Mo. 62 (11 S. W. Rep. 308); Whittaker v. Canal Co. (1891), 126 N. Y. 544 (27 N. E. Rep. 1042); Northern Pacific R. R. Co. v. Nickels (1892), 4 U. S. App. 369 (50 Fed. Rep. 718).
*532 This principle we think applies to the matter of orders that govern the daily routine of the master’s service. The duty to use care to bring the order to the notice of the person required to act upon it is as much an essential part of the duty of careful direction as is the promulgation and enforcement of rules, after they have been adopted by the master to govern the action of his employees.
For these reasons we dissent from the judgment that now turns the plaintiff finally out of court as having no cause of action.
We agree with the learned trial judge, who held that the facts tend to make out a case, under the law of Missouri.
II. In view of the result announced by a majority of the court, it is unnecessary to discuss other points of objection to the circuit judgment. They were held untenable on the first hearing of the case (24 S. W. Rep. 746), and not having been mentioned by our learned brother Macfarlane, we also forbear taking them up.
We vote for affirmance of the judgment, and dissent from any different result.
Brace, C. J., and Burgess, J., concur in this opinion.