## Chicago & N. W. Ry. Co. v. Patrick Delaney.

1. ORDINARY CARE—*To be Judged by the Circumstances of Each Case.*—Negligence and ordinary care are relative quantities. Where the danger is very great, ordinary care requires closer watchfulness than it does in a case where the danger is only slight. A jury has a right to consider the extent of the danger to a person who was injured, and to determine what ordinary care required of the person charged with negligence.

2. FELLOW-SERVANTS—*Who are, a Question of Fact for the Jury.*—Whether a person suing for damages for personal injuries was hurt through the negligence of a fellow-servant, is a question of fact for the jury.

3. SAME—*When the Doctrine Does Not Apply.*—It is the duty of a railroad company to furnish to its employes proper appliances and a safe road bed, and it can not justify a failure to do so by showing negligence on the part of a fellow-servant of one who has been injured.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of LaSalle County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed in part. Opinion filed December 9, 1896.

WM. BARGE, attorney for appellant.

JAMES W. DUNCAN, attorney for appellee; LINCOLN & STEAD and DUNCAN & HASKINS, of counsel.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit by appellee against appellant for damages received by being injured so as to lose a leg while he was acting as foreman of a switching crew at Spring Valley, Illinois. The main charge of negligence was that cars filled with coal were switched in on the side track at appellant's yards, and in so doing, from about two to four o'clock P. M., November 14, 1893, the draw-bar was broken off one of the cars and laid upon the track, when, about nine o'clock at night, appellee, in switching the cars on the main track, while riding on the foot-board of the pilot, was injured by the foot-board being turned under the pilot and appellee's leg injured so that he was compelled to have it amputated.

The verdict in the case was for $12,500, and the point having been raised in this court by the appellant that the damages were excessive, and this court holding that such was the case, required a remittitur by appellee of $6,500, and on the 30th day of June, 1896, appellee, by his attorney, came into court and filed a remittitur in writing and offered to remit the sum required from the judgment.

Having done this, the question of excess of damages is eliminated from the case, as this court is of the opinion that if appellee is entitled to recover at all, the sum of $6,000 would not be excessive. We will, then, proceed to the consideration of the case.

The declaration consists of two counts; the first alleges that the defendant was engaged in operating a railroad consisting of tracks, and particularly track No. 3, leading into and connecting with coal shaft No. 1 in Spring Valley; that appellant carelessly permitted track No. 3 to be obstructed by a large and weighty iron object known as a draw-bar, of which obstruction the plaintiff had no knowledge, and while he was in the employment of the defendant as night switch-

man, and in the performance of his duties, and standing upon the foot-board of the pilot of the engine, and proceeding along track No. 3 in the exercise of all due care and caution, said foot-board came in contact with the said draw-bar and the left foot of the plaintiff was caught and wounded and shortly thereafter amputated.

The second count charges negligence upon the part of the appellant in placing upon the said locomotive and pilot a foot-board that extended too close to the rails to be reasonably safe, and that that was the cause of the injury.

Appellant filed a plea of the general issue.

The yards at Spring Valley are known as Nos. 1 and 2, and in this case are designated as Shaft No. 1 and Shaft No. 2. Several tracks are in yard No. 1; among them Nos. 1, 2, 3 and 4. The evidence tends to show that both these yards were clean of all scraps of iron or other obstruction on the 14th of November, 1893, it being the evening of that day when the plaintiff was hurt. Track No. 3 in yard No. 1 was cleaned between eleven and twelve o'clock in the forenoon of that day. Track No. 3 was again inspected by the foreman in the afternoon, but whether before or after the draw-bar in question fell upon the track does not appear.

The sun set at 4:40 o'clock on that day, and it was dark at 6 o'clock.

George B. Draper was the yard master or switchman and employed appellee and the day and night crews.

The evidence tends further to show that from about two to four o'clock in the afternoon of that day, that car No. 8866, loaded with lump coal, was taken from track No. 1 and put upon track No. 3 about eleven o'clock in the forenoon of that date. In doing so, the evidence tends to show, the draw-bar of the said last mentioned car was broken off and left deposited upon said track No. 3. It was a piece of iron about eighteen inches long, ten inches wide and six or eight inches thick.

About 8:30 o'clock in the evening of that date the plaintiff and his crew proceeded along track No. 3 with engine No. 282 to remove some cars from it and put them in a

train they were then forming. Appellee and two of his
men were standing on the foot-board when the pilot came
in contact with a piece of draw-bar that was lying upon the
track between the rails and his foot was caught and injured
as above stated.

It is insisted that the verdict is against the weight of the
evidence and that the court erred in refusing the defendant's
5th, 12th, 13th, 23d and 24th instructions and in modifying
defendant's 8th and 9th instructions. Also that the court
erred in refusing at the close of the testimony to exclude
the evidence and to instruct the jury to find the defendant
not guilty.

Negligence and reasonable care are relative quantities.
Where the danger is very great, reasonable care requires
closer watchfulness than it would in a case where the dan-
ger is only slight, and the circumstances of the injury in
this case, and the cause of it, were all before the jury. The
jury had a right to consider the extent of the danger to a
person in the condition of appellee, riding on a foot-board
constructed as this was, only six or eight inches elevated
above the track, with reference to an iron, like the draw-bar
in this case, lying upon the track, and to determine what
reasonable care required of appellant to keep such an ob-
struction off the track. And we are unable to say that the
jury erred in deciding that appellant failed to exercise such
care. The evidence tended to show that this obstruction
was lying on the track from two to four o'clock that day,
also that it must have taken some violent bumping to have
broken the draw-bar in the manner it was broken, and we
think it would be reasonable to hold the appellant guilty of
negligence in not discovering the fact that the draw-bar was
broken at the time of the jar, or in not discovering that it
was on the track between 2 o'clock and 8 : 30 P. M.

There was evidence tending to show that Draper was
vice-principal of appellee and not fellow-servant; also to
show that appellant failed to perform its duty to keep the
track clear and to supply proper appliances for the safety
of its employes.

The question of whether appellee was injured on account of negligence of a fellow-servant is a question of fact for the jury.  Pullman Palace Car Co. v. William Laack, 143 Ill. 242; Sutherland v. North Pacific Railway Co., 43rd Fed. R. 646;  U. S. Cir. Ct. for Minn.; Bessex v. C. & N. W. Ry. Co., 45 Wis. 477; Lewis v. St. L. & Q. M. R. R. Co., 59 Mo. 495.

It is therefore the duty of a railway company to furnish proper appliances and a safe road bed without reference to the question of fellow-servants, as will be seen by the above authorities and many others that might be quoted.

In regard to the refusal and giving of instructions, and modifying instructions, we have only to say that we think the jury was fully and amply instructed on the part of the appellant in the fifteen instructions given on its part out of the twenty-five asked; the four modified instructions, as given, were not a part of the fifteen and, as we think, not modified to the injury of appellant, but properly modified.

We also think that after the remittitur the damages in the case are not excessive.

The remittitur of $6,500 offered by appellee from the judgment is accepted and allowed by this court, and the judgment of the court below affirmed for the sum of $6,000.

It is further ordered that appellee pay the costs of this appeal.


MR. JUSTICE CRABTREE DISSENTING.

I am unable to agree with the majority of the court in the conclusions reached in this case.  I think that the excessive verdict of $12,500 shows that the jury must have been actuated by passion and prejudice, and the remittitur of $6,500, entered upon the demand of this court, under penalty of reversal unless such remittitur were entered, does not, in my opinion, purge the verdict of its original vice. Even in a case where the plaintiff establishes a good cause of action, and shows that he is clearly entitled to recover, I think the damages should be assessed by a fair-minded jury, and not by this court.

But in this case, after a very careful examination of the evidence, I am of the opinion that appellee has failed to establish a right to recover under either count of his declaration.

The first count charges negligence in permitting track number three to be obstructed by the draw-bar which caused appellee's injury. But the evidence clearly shows that on the day of the injury the yards and track where it occurred were thoroughly cleaned of all obstructions by the section foreman and his gang of hands, the work being finished between eleven and twelve o'clock in the forenoon of that day. And there is evidence that the section foreman again went over the yard and inspected it in the afternoon of the same day.

So far as the cleaning of the yards and track, and the removing of obstructions therefrom is concerned, I think there was no want of reasonable or ordinary care on the part of the appellant or its employes. The evidence does not fix the precise time when Draper, the yard master, switched the cars onto track number three, but it could not have been, at furthest, more than an hour or two before sunset. It appears from the evidence that car No. 8866 from which the draw-bar, which caused appellee's injury, was broken, was carefully inspected by appellant's servants on the evening of November 13th, and again on the morning of November 14th, the day of the injury, and this inspection showed, that so far as the draw-bars were concerned, the car was in good order. It can not therefore be reasonably said, that as to this car there was any want of due care in the matter of inspection. Nevertheless, the next morning one of the draw-bars was found broken, and no doubt it was the same one which caused appellee's injury.

How it came to be broken off does not clearly appear. The yard master, Draper, testifies that when the cars, (including No. 8866) were set in on track number three, he did not discover any jamming; "that they hit a little hard, but nothing more than what often occurs. That it was very common." This testimony appears to be uncontra-

dicted, and, if true, nothing happened when the cars were set in, which, in the exercise of reasonable care, required an examination to see if anything was broken. I fail to find in the record any evidence which shows that the breaking of draw-bars, under like circumstances, was a matter of such frequent occurrence as to require an immediate inspection to ascertain whether any were broken or not. On the contrary, it seems to me it was an unusual and unlooked-for occurrence—a mere accident, which, in the exercise of reasonable care, appellant was not bound to look out for or anticipate.

If the breaking of draw-bars from cars under such circumstances was a matter of frequent occurrence, then it would seem that the hazard of encountering such an obstacle was one of the risks ordinarily incident to the employment of appellee, and for an injury arising therefrom, appellant would not be liable. Under all the circumstances shown by the evidence, I think the appellant was not guilty of negligence in failing to have the yard and track in question cleaned and free from obstructions, nor in the inspection of the car from which the draw-bar was broken, nor in failing to discover the broken draw-bar upon the track. It was not then long enough before dark to charge appellant with constructive notice, and there is no proof of actual notice. But if it was the duty of any one, under the circumstances, and at the time of day or night, to discover the broken draw-bar, it was that of Draper, the yard master, acting as switchman, when he set the cars onto the side track, and if, in that respect, he was negligent, I think it was the negligence of a fellow-servant with appellee, engaged in the same line of employment. He may have been a superior servant, or vice-principal in some respects, but certainly not as to this particular act. I think that it does not necessarily follow, that because one employe occupies a superior position, even though it be to the extent of having power to hire and discharge, that therefore in no event can they be fellow-servants. A section foreman may have the power to employ, direct and discharge the members of his gang, but

if, while working with them, one is injured by his careless-
ness, the negligence might not be that of the employer, but
that of a fellow-servant.    For instance, if the foreman and
one of his men were carrying a bar of railroad iron, and the
foreman should carelessly drop it so that the man was in-
jured, or if, in driving a spike, the foreman should carelessly
strike one of the men with his hammer and thereby do him
injury, I apprehend it would be the negligence of a fellow-
servant and not that of the common master.    So in the case
at bar.    While Draper employed and directed appellee in his
work, yet they each acted as foreman of a switching crew,
and each ran the risk of injury from the negligence of the
other; their relations in that respect in my opinion made
them fellow-servants within the rule.    To demand greater
care than seems to have been exercised in this case would
require the railroad companies to constantly patrol their
tracks, to see that there were no obstructions thereon, and
every time a car was switched upon a siding, there must be
a careful inspection and examination, to see that nothing
had been broken and dropped upon the track.    It seems to
me this would be requiring such extraordinary care as to be
unreasonable and burdensome in the extreme.

As to the charge of negligence in the second count of the
declaration, concerning the alleged improper construction
of the stub pilot and foot-board of the engine upon which
appellee was riding at the time he·was injured, I am of
the opinion the evidence does not sustain the charge.    On
the contrary, they appear to have been properly constructed
for the purpose for which they were designed.    They were
not intended to run over obstructions the size of the broken
draw-bar which caused the injury, and its presence upon the
track was a mere unusual and unlooked-for accident.

In that particular case, no doubt it would have been better
had the foot board been higher, but in ordinary cases it was
high enough to be reasonably safe.

But even if it be conceded that the foot-board was too
low, yet the appellee had equal opportunity with the appel-
lant of knowing the fact.    He was no novice in the use of

such machinery, and he testifies to seeing the engine, equipped as it was at the time of his injury, as early as the latter part of October, 1893, when it was at the round house; and he says he was there, on one occasion, looking at it for ten or fifteen minutes. The evidence shows that for a number of nights before the injury, some eight or ten, he worked on this particular engine without complaint. If there were any defects in construction they were obvious and patent, and could be as well seen and observed by him as by any other servants of the company, and he must therefore be presumed to know of such defects if any existed, and to have been willing to assume the risks, in absence of any complaint on his part and a promise of repair or change on the part of appellant. The law is well settled that an employe can not recover for any injury suffered in the course of the business about which he is employed, from defective machinery, after he has knowledge of the defects and continues to work without promise or representations that the defect will be remedied. In such a case it will be presumed he voluntarily assumed the risk, and waived whatever obligations rested upon the employer to furnish complete and perfect appliances. I do not deem it necessary to cite authorities in support of this proposition. They are numerous in this State. This court has fully recognized the doctrine in other cases.

I think the court below erred in not sustaining the motion to direct a verdict for defendant, and in my opinion the judgment should be reversed.