## JOHN BURKARD v. A. LESCHEN & SONS ROPE COMPANY, Appellant.

### Division Two, March 9, 1909.

1. **MASTER AND SERVANT: Negligence of Foreman: Assurance of Safety.** Where a servant is apprehensive that the place in which he is required to work is dangerous and unsafe, and calls the attention of defendant's foreman in charge of the work and in charge of the servant to the dangerous condition, and relies on the assurance of the foreman that there is no danger, and the servant is injured without any negligence on his part, the master is liable for the servant's damage.

2. ————: **Foreman or Fellow-Servant.** If plaintiff was under the control and direction of another one of defendant's employees, who directed him what to do and was his superior in the particular work they were performing at the time, although they worked together at the same common work, they were not fellow-servants, but the other was the defendant's vice-principal.

3. ———: **Assurance: Expression of Opinion.** Coils of wire, weighing between 100 and 125 pounds, were stacked up in columns ten or twelve feet high, and plaintiff and defendant's assistant foreman were engaged in removing the coils to another part of the warehouse. As plaintiff was returning with his truck he noticed the columns were leaning, and called the attention of the assistant foreman to them and told him that they were getting dangerous, and to have them braced. The foreman said, "Just go ahead; there is no danger; come on with the wagon." *Held*, that this was not a mere expression of an opinion by the foreman, but an assurance that there was no danger; and as plaintiff relied upon it, and was injured when the columns fell, defendant is liable.

4. ———: **Reasonable Care.** It is the duty of the master to exercise reasonable care to protect his servant from the hazards incident to his employment.

5. ———: **Servant's Knowledge of Danger: Contributory Negligence.** Where the defense is a plea of contributory negligence, the servant's knowledge of the unsafe condition of the place in which he is required to work may be shown in evidence, but such knowledge precludes a recovery only when the danger is so obvious that a man of ordinary prudence would, under the circumstances, refuse to do his master's bidding; and whether the danger was so obvious and imminent as to make it contributory negligence on the servant's part to continue in his master's service, is a question for the jury.

6. ———: ———: **Instruction.** And where the servant's knowledge of the danger is not made an issue by the pleadings, it is not error for plaintiff's instructions to ignore his knowledge.

7. ———: **Bracing Leaning Columns: Duty of Foreman.** Where plaintiff testified that he had seen the assistant foreman under whom he was at work and other foremen give orders to brace other leaning columns of coils of wire which were in a leaning attitude, as were those which fell on him, and that he asked the assistant foreman to have them braced, it cannot be said that the foreman had no duty to perform regarding the wire columns which fell. Having been warned that they were liable to fall, it was his duty to take precaution to make them safe, and his act in directing plaintiff to "come on" was negligence, for which his master is liable.

8. ———: **Pleading: Departure.** Defendant should not be permitted to stand quietly by, make no objection to the petition, or to the admission of evidence tending to sustain its inartistically drawn allegations and tending to sustain the theory upon which the instructions were given, and then on appeal be heard to contend that the instruction is broader than the petition. And in this case, where the petition charged that defendant

was negligent in allowing the wire column to remain in a dangerous condition for want of propping, and the evidence on both sides was, without objection, directed to leaning columns, it will not be held that an instruction which told the jury that if "the wire columns were in a leaning condition and were thereby rendered dangerous and unsafe to work about," etc., was such a departure as would authorize a reversal, although the petition does not say in so many words that the wire columns that fell on plaintiff were in a leaning condition and were thereby rendered dangerous and unsafe to work about.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

Affirmed.

*Percy Werner, Wm. F. Broadhead* and *Jones, Jones, Hocker & Davis* for appellant.

*Sterling P. Bond* and *R. L. Shackelford* for respondent.

(1) Where the servant has apprehensions of the danger of the place where he is required to work but relies upon the assurance of the foreman, in charge of the work and in charge of the servant, that it is safe, and the servant is injured, the master is liable for such injuries. Brothers v. Carter, 52 Mo. 376; Lewis v. Railroad, 59 Mo. 508; Gormley v. Vulcan Iron Works, 61 Mo. 496; McGowan v. Railroad, 61 Mo. 532; Keighan v. Kavanaugh, 62 Mo. 232; Cook v. Railroad, 63 Mo. 403; Dowling v. Gerard B. Allen & Co., 74 Mo. 19; Stephens v. Railroad, 86 Mo. 230; Miller v. Railroad, 109 Mo. 357; Russ v. Railroad, 112 Mo. 53; O'Mellia v. Railroad, 115 Mo. 205; Moore v. Railroad, 85 Mo. 595; Cole v. Railroad, 183 Mo. 91; Carter v. Baldwin, 107 Mo. App. 226; Wojtylak v. Coal Co., 188 Mo. 261; Keilty v. Construction Co., 121 Mo. App. 58; Garard v. Coal & Coke Co., 207 Mo. 258; Dodge v. Mfg. Coal & C. Co., 115 Mo. App. 501; Edge v. Railroad, 206 Mo. 417; Bane v. Irwin, 172 Mo. 317.    (2)

The neglect of the duty of the master to use ordinary care in furnishing a reasonably safe place for his servants to work, with the servant's knowledge of the condition, does not convert the master's negligence into an assumption of the risk on the part of the servant. In such case the servant's knowledge of the condition is a fact to be considered under the plea of contributory negligence, and when the defense is based on that, it precludes a recovery only when danger is so glaring that a man of ordinary prudence, under the circumstances, would refuse to do his master's bidding. And where there is evidence that the master's failure to furnish a safe place to work was the result of his order to his employee, the question of whether the danger was so glaring and imminent as to make it contributory negligence for the servant to continue in his master's service, is a question for the jury. Curtis v. McNair, 173 Mo. 270; Wendler v. House Furnishing Co., 189 Mo. 502; Kielty v. Construction Co., 121 Mo. App. 63; Curtis v. McNair, 173 Mo. 270; Fogerty v. St. Louis Transfer Co., 180 Mo. 555; Dodge v. Mfrs. Coal & Coke Co., 115 Mo. App. 508; Koerner v. Car Co., 209 Mo. 157. (3) The foreman or other representative may occupy a dual capacity. If the master or foreman engage in the same kind of work with the laborers, still they are not fellow-servants. William Akin was such foreman and occupied a dual capacity. Gorman v. Vulcan Iron Works, 61 Mo. 495; Haworth v. Railroad, 94 Mo. App. 215; Rowland v. Railroad, 20 Mo. App. 469; Grattis v. Railroad, 153 Mo. 394; Miller v. Railroad, 109 Mo. 356; Russ v. Railroad, 112 Mo. 45; Dayharsh v. Railroad, 103 Mo. 570; Fogerty v. Transfer Co., 79 S. W. 669; Bien v. Railroad, 108 Mo. App. 399; Neves v. Green, 111 Mo. App. 641. (4) The servant simply assumes the risk of the dangers incident to his employment. He does not assume the risk of the master's negligence. A question of contributory negligence arises, not one of risk. Cole v. Railroad,

183 Mo. 94; Charlton v. Railroad, 200 Mo. 413. (5) Plaintiff's petition states a cause of action: A similar petition was held good in the case of Kielty v. Construction Co., 121 Mo. App. 58; Wojtylak v. Coal Co., 188 Mo. 206; Fisher v. Central Lead Co., 156 Mo. 485; Tucker v. Tel. Co. (Mo. App.), 112 S. W. 7. The objection to the petition is raised in the appellate court for the first time and comes too late. Dodge v. Mfrs. Coal & Coke Co., 115 Mo. App. 507. After trying a cause on a certain theory in the trial court, it is too late for a party to change front in the upper court, and repudiate that theory. Epperson v. Cable Co., 155 Mo. 370.

BURGESS, J.—Plaintiff recovered judgment in the court below for $5,000 damages for personal injuries alleged to have been caused by the negligence and carelessness of the defendant and its foreman, from which judgment defendant appeals.

The record shows that plaintiff was a laborer employed by the defendant company in its bonded warehouse in the city of St. Louis, and had been in the employ of the company about five months at the time of the injury, November 11, 1904. The company worked about two hundred men in its warehouse, and had a general foreman named Henry Peterson, under whom were foremen or bosses in control of different gangs of men, two of said foremen being William A. Akin and Henry J. Schleuter.

The plaintiff's testimony was, in substance, as follows: On the day in question he, with three other men, was ordered by foreman Akin to assist in removing wire bundles from one place in defendant's bonded warehouse to another. After working a while removing the bundles, Akin took three of the men to another part of the warehouse and showed them how to pile the wire, and then returned and assisted the plaintiff in removing the wire coils, placing them on trucks and

hauling them to the place where the other men were stacking them up. The coils of wire weighed between a hundred and a hundred·and twenty-five pounds each, and before being removed had been piled up in the form of columns. They had removed over three hundred of these coils, and plaintiff was coming back with an empty truck, and while in the aisle, about ten feet away, he noticed the columns which later fell on him leaning over. He called the attention of the foreman to them, and told him to have them braced up, as they were getting dangerous. Akin replied, ''Just go ahead; there is no danger; come on with your wagon.'' In obedience to the foreman's order, and relying upon his assurance that there was no danger, plaintiff continued his work. After they had removed two more loads of wire, the columns in question, which were ten or twelve feet high, fell on plaintiff, breaking both his legs. His left ankle was dislocated and the small bone broken, and his right leg was broken and mashed. He was confined to his bed for about five months, under the care of physicians, and had been unable to do any work from the time he was injured. Plaintiff was not an experienced man, and had not been in the warehouse more than a dozen times during the five months he was in the employ of the company. He had seen the wire columns braced under the orders of different foremen, whose custom it was to give orders to have the columns braced when they deemed it necessary. Among those whom he had heard give such orders were foremen Akin and Schleuter, and the general foreman, Peterson. Dr. William Baker testified as to plaintiff's injuries, stating that he was permanently injured; that he attended to plaintiff's injuries from November 30, 1904, to March 2, 1905, and that his bill for his services was seventy-five dollars.

Besides plaintiff, the only eye-witnesses to the accident were William A. Akin and C. M. McKenzie, the latter being Government inspector, United States

custom. Akin testified that he was foreman and directed the plaintiff and the other men under his control in their work; that he was himself injured by the fall of the wire columns in question, and was laid up for over four weeks. He, however, denied that plaintiff said anything as to the dangerous condition of the columns, or that he told plaintiff there was no danger. McKenzie, the Government inspector, testified that he was standing ten or fifteen feet away from the men at the time the columns fell, and that he heard no remarks made such as testified to by plaintiff. The general foreman, Henry Peterson, testified for the defendant that Akin did not occupy the position of foreman, and had no authority over the men with whom he was working at the time, but that John H. Schleuter was then foreman. This testimony, however, was controverted by that of Akin, Schleuter and Burkard.

The court, at the request of plaintiff, instructed the jury as follows:

"1. The court instructs the jury that it was the duty of the defendant to furnish the plaintiff a reasonably safe place to work. If the jury believe and find from the evidence that William Akin was intrusted by the defendant with authority to superintend, control and command over the plaintiff, and was managing and controlling the work in question and the plaintiff, as defendant's agent; and if you further believe and find from the evidence that at the time of the plaintiff's injuries the wire columns were in a leaning condition and were thereby rendered dangerous and unsafe to work about, and that said Akin had authority to brace said columns so as to prevent them from being dangerous, and that it was a part of his duty to so brace them, and that said Akin either knew, or by the exercise of ordinary care would have known, that said wire columns were dangerous and unsafe by reason of the same being in a leaning condition, in time so that by the exercise of ordinary care he might have

put or caused the same to be put in a reasonably safe condition by so bracing the same before the injuries of the plaintiff, and that the said Burkard at the time of the injuries exercised ordinary care, and while in the exercise of such care the wire columns fell on him in consequence of them being in a leaning condition, and thereby dangerous and unsafe, and he was thereby injured, then your verdict must be for the plaintiff.

"2. By the words 'ordinary care' as used in these instructions is meant that degree of care and caution usually exercised by reasonably prudent men under the same or similar circumstances, and by the word 'negligence' is meant a failure to exercise ordinary care.

"3. If the jury find from the evidence that one William Akin was foreman of the defendant, A. Leschen & Sons Rope Company, and as such foreman was superintendent for the defendant of the plaintiff and of the place where plaintiff was required to work, if you find plaintiff was required to work at such place, and superintendent for the defendant of the work of removing the wire columns, and had entire superintendence, charge and control thereof, and had power and authority to provide material to brace the wire columns in question, and that this was a part of his duty, and that said Akin was the representative of the defendant directing the work in question, and the plaintiff was subject to his orders and directions, then the jury are instructed that said Akin's acts and conduct in connection with said wire columns and the bracing thereof were the acts and conduct of the defendant so far as this case is concerned, and in respect to said acts he was not a fellow-servant with the plaintiff.

"4. The court instructs the jury that defendant must show by the greater weight of the evidence that plaintiff has been guilty of contributory negligence in order to prevent his recovery on that ground.

"5. If you find a verdict in favor of the plaintiff, you will assess his damages at such sum as will reasonably compensate him for whatever injuries you believe from the evidence he has sustained, if any, and in estimating such damages you will take into consideration: 1st, the nature, character and extent of such injuries, if any; 2nd, the pain of body and mind, if any, which he has suffered from said injuries and directly caused thereby; 3rd, the pain of body and mind, if any, which plaintiff will suffer from said injuries in the future therefrom and directly caused thereby; 4th, the amount and value of time, if any, lost to plaintiff, in consequence of said injuries, and directly caused thereby; 5th, the impairment in his earning capacity, if any, and directly caused by such injuries."

To the giving of said instructions the defendant duly excepted.

At the request of the defendant, the court further instructed the jury as follows:

"6. The court instructs the jury that the employer's obligation towards an employee does not oblige him to keep a working place in condition at every moment of the work so far as the safety of the place depends upon the due performance of the work in hand by fellow-servants.

"7. The court instructs the jury that a man, upon entering any employment, agrees to assume all the ordinary risks incident to the service in which he engages and if you find from the evidence in this case that plaintiff was injured not by reason of any negligence on the part of the defendant or any of its representatives, as explained in others of these instructions, but as the result of one of the ordinary risks of the work in which he was engaged, or as the result of a mere accident, then your verdict should be for the defendant.

"8.  The court instructs the jury that if you find from the evidence that the plaintiff John Burkard and the man who was working with him, William Akin, at the time in question, were both directly co-operating in the work of removing wire columns from the room in question, and were so consociated with each other that each was in a position to observe the work of the other, and exercise a care promotive of mutual caution, and that each was at full liberty to use such methods, in performing the work in hand, as to him seemed proper in the exercise of ordinary care, and that neither had control over the other in the matter of the selection of appliances or the method of doing the work in hand, then the said plaintiff and the said William Akin were fellow-servants in the performance of such work, and the defendant would not be responsible for any assurance which said Akin may have given that plaintiff could safely continue the work of removing the wire after he observed the danger, even if you believe from the evidence that said Akin did give such assurance.

"9.  The court instructs the jury that if you find from the evidence that William Akin who was at work with plaintiff removing the columns in question, assisted in the manual work of removing the said columns, doing the same work that plaintiff did, and the evidence fails to show that he was empowered by the defendant to exercise any control over plaintiff, or that he had any power to hire or discharge men, or to select and provide instrumentalities for their work or to decide for other employees what method should be pursued in performing work, then the said William Akin was a mere fellow-servant of the plaintiff and any assurance of safety, which the evidence may show he may have given to plaintiff, would not result in any liability on the part of the defendant.

"10.  The court instructs the jury that the duty of the master to provide a safe place for his employees

in which to do their work does not extend to conditions
which the employees create in the performance of and
as a detail of such work; and if you find from the
evidence that the instability of the columns of wire,
which fell and injured plaintiff, was brought about by
the previous work which had been done by plaintiff
and the man at work in the removal of such columns
with him, just prior to the accident, and that the said
plaintiff and the said William Akin so at work with
him, were fellow-servants, as explained in others of
these instructions, then no recovery can be had in this
case and your verdict should be for the defendant.

"11.   The court instructs the jury that even if
you believe from the evidence that the said William
Akin who was at work with plaintiff at the time in
question, was a vice-principal, empowered, on behalf
of the defendant, to decide for other of the employees
as to the methods which should be adopted in doing
the work in question, and that he did give plaintiff an
assurance of his safety in doing the said work, and
that plaintiff so received and understood and relied
upon such assurance, yet, if you believe from the evi-
dence that said assurance was not negligently given,
and that there was nothing at the time in question to
have warned a reasonably prudent man of the danger
of said columns falling, then no recovery can be had by
plaintiff against the defendant based on any such as-
surance.

"12.   The court instructs the jury that if you find
and believe from the evidence that whatever, if any-
thing, passed between plaintiff and William Akin with
reference to the safety of the columns of wire in ques-
tion, was the mere interchange of opinions and that
whatever may have been said by the said William
Akin was understood by the said plaintiff as a mere
expression of opinion and was not regarded by plain-
tiff otherwise than as such, and that he voluntarily
continued at the work in question in reliance upon his

own opinion as to his safety, then your verdict should be for the defendant.

"13. The court instructs the jury that if they believe and find from the evidence that plaintiff did not complain to any one that there was any danger of the wires falling and that no one gave him any assurance that there was no danger, then the plaintiff cannot recover.

"14. The court instructs the jury that there is no evidence in this case that the columns of wire were piled to an unusual height in the wareroom at the time and place in question."

Defendant further asked the court to give the following instructions:

"1. The court instructs the jury that under the pleadings and the evidence which has been adduced, your verdict should be for the defendant.

"2. The court instructs the jury that the plaintiff and the workman, William Akin, were at the time and place, and in the matter of the work in which they were engaged at such time and place, fellow-servants within the rule of law which exempts the master from liability for injuries sustained by one servant through the negligence of a fellow-servant.

"3. The court instructs the jury that there is no complaint made by plaintiff in his petition that the defendant was guilty of any negligence in failing to furnish all the necessary props which would have been required to prevent the columns of wire from falling, and you are instructed the defendant was not bound to supervise the mere details of the work in handling and removing the columns of wire in question and that for the negligence of plaintiff or any other of its servants engaged in doing this work, in failing to use props, if they were so negligent, there would be no liability therefor on the part of the defendant.

"4. The court instructs the jury that if the place at which plaintiff was at work became dangerous at

the time he was injured only by reason of the negligence of plaintiff's fellow-workman in the manner in which the columns of wire in question were originally piled, or the manner in which those, which had been taken away, were removed, then plaintiff must be held to have assumed the risk of such danger and no recovery can be had by him for injuries resulting from such negligence.

"5.   The court instructs the jury that, in this case, plaintiff seeks to recover damages from the defendant on the ground that he was required to work in a place which was unsafe by reason of the fact that the columns of wire, which he was assisting in removing, were piled up to an unusual height and that he, having observed that they looked dangerous, attracted the attention of William Akin, a servant of the defendant, who was working with him, to such danger, and that said Akin assured him that there was no danger, whereas, he knew, or might, by the exercise of ordinary care, have known that the said columns were dangerous and could have  braced same to have prevented their falling and negligently failed to do so; and you are instructed that if you find from the evidence that whatever of danger there was to plaintiff, to be apprehended from the falling of the said columns of wire, was just as open and apparent and as readily understood by the plaintiff as by the said Akin and that plaintiff's knowledge or means of knowledge of apprehending and understanding the danger were fully equal to that of the said Akin and that plaintiff voluntarily continued to work about said columns after his observation of the danger, then he must be held to have assumed the risks of working thereabouts and your verdict should be for the defendant."

To the action of the court in refusing to give the above instructions the defendant duly excepted.

At the close of plaintiff's evidence and again at the close of the whole case, the defendant asked for an

instruction in the nature of a demurrer to the evidence, which the court refused to give, and defendant claims this was error. The argument is that plaintiff's injury was the result of pure accident, for which no one was responsible, and that plaintiff was fully advised of the particular risk incident to his employment, and assumed that risk.

It is true that plaintiff knew the dangerous condition of the columns of coiled wire, one of which afterwards fell on him, and that he called the attention of foreman Akin thereto. Akin, upon whose experience and superior judgment plaintiff had a right to rely, assured plaintiff that there was no danger, and said, "Come on with your wagon." In obedience to this command, and being assured that there was no danger, plaintiff proceeded with his wagon, and one of the leaning columns of wire soon afterwards fell on him, causing the injuries complained of. That Akin was at the time of the injury one of defendant's foremen, and had charge and control of plaintiff in and about the work in which he was then engaged, was found by the jury to be the fact; and it has uniformly been ruled by this court that where a servant is apprehensive that the place in which he is required to work is dangerous and unsafe, but relies, as the evidence in this case shows plaintiff did rely, upon the assurance of the foreman in charge of the work and in charge of the servant, that it is safe, and the servant is injured without any negligence upon his own part, the master is liable. [Brothers v. Cartter, 52 Mo. 372; Lewis v. Railroad, 59 Mo. 495; Gormly v. Vulcan Iron Works, 61 Mo. 492; Cook v. Railroad, 63 Mo. 397; Moore v. Railroad, 85 Mo. 588; Russ v. Railroad, 112 Mo. 45; O'Mellia v. Railroad, 115 Mo. 205; Cole v. Railroad, 183 Mo. 81; Edge v. Railroad, 206 Mo. 474; Garard v. Coal & Coke Co., 207 Mo. 242.]

But defendant contends that no negligence was shown on the part of Akin, and that his remark that

the column of wire which subsequently fell upon plaintiff was not dangerous was the mere expression of an opinion on the part of a fellow-servant of plaintiff as to a matter regarding which plaintiff had equal means of knowledge with him; that the language, "Come on with your wagon," was in no sense an order; that plaintiff had no right to rely on what Akin said, and that there was no evidence that he did rely upon it.

We are unable to agree to this. It was negligence for Akin to say to plaintiff, in effect, that there was no danger to be apprehended from the leaning column of wire, without first taking the precaution to ascertain whether it needed to be braced or not, particularly after plaintiff called his attention to its condition.

Akin and plaintiff were not fellow-servants. While they worked together at the same time and place, plaintiff was under the control and direction of Akin, who was his superior while engaged in this work. As already stated, plaintiff had the right to rely·upon what Akin, his superior, told him, and the evidence shows that he did so. But defendant insists that plaintiff's testimony in this regard is overcome by other testimony. It is only necessary to say as to this that it was a question for the consideration of the jury, who found otherwise.

The plaintiff's first instruction is criticised upon the ground that it bases plaintiff's right to recover upon the duty of Akin to brace the columns, if he knew, or by the exercise of due care could have known, that they were unsafe, and that it ignores the fact that plaintiff knew the danger and so testified, and that Akin honestly believed the wire piles were safe. With respect to the insistence that the instruction is bad because it ignores the fact that plaintiff knew the danger, it need only be said that there is no such issue in the pleadings. The petition is based upon the alleged negligence of defendant in failing to furnish plaintiff a reasonably safe place to work, and the

answer alleges contributory negligence on the part of the plaintiff. It is the duty of the master to use ordinary care in furnishing his servant a reasonably safe place to work, and where, as in this case, the defense is a plea of contributory negligence, the servant's knowledge of its unsafe condition may be shown in evidence, but such knowledge precludes a recovery only where the danger is so obvious that a man of ordinary prudence would, under the circumstances, refuse to do his master's bidding; and the question of whether the danger was so obvious and imminent as to make it contributory negligence for the servant to continue in his master's service is a question for the jury. [Curtis v. McNair, 173 Mo. 270; Wendler v. House Furnishing Co., 165 Mo. 527; Fogarty v. St. Louis Transfer Co., 180 Mo. 490; Dodge v. Mfrs. Coal & Coke Co., 115 Mo. App. 501; Kielty v. Construction Co., 121 Mo. App. 58.] While the evidence is not sufficient to show that the danger was so obvious and imminent as to make it contributory negligence on the part of plaintiff to continue working under the circumstances, that fact did not absolve the foreman Akin from the duty of bracing the wire columns after his attention was called to their leaning attitude.

It is said for defendant that Akin had nothing to do with the wire columns which fell, and that there is nothing in the evidence from which a jury could properly infer that he had any duty regarding them. This evidently is a mistake. Plaintiff testified that he had seen and heard Akin and other foremen of the defendant give orders to brace other wire columns which were in a leaning attitude as these were. Akin represented the defendant, was a vice-principal, and had power to superintend, control and direct the plaintiff in the performance of his work. For his negligent act in commanding the plaintiff to "come on,"

and in failing to take any precaution to see that the leaning columns were rendered safe and steady, after his attention was called thereto by plaintiff, the master is liable. [Miller v. Railroad, 109 Mo. 350, and authorities cited.] It is the duty of the master to exercise reasonable care to protect his servant from the hazards incident to his employment.

In Moore v. Railroad, 85 Mo. 588, it is ruled that they are fellow-servants who, under the direction and management of the master himself, or by some servant placed by the latter over them, are engaged in the prosecution of the same common work, and without any dependence upon or relation to each other except as colaborers without rank, and that he is a vice-principal who is intrusted by the master with power to superintend, direct or control the workman in his work, and that for negligence in such superintendence, direction or control, the master is liable. That case has been many times cited with approval by this court. [Hoke v. Railroad, 88 Mo. 360; Stephens v. Railroad, 86 Mo. 221; Smith v. Railroad, 92 Mo. 359; Tabler v. Railroad, 93 Mo. 79; Russ v. Railroad, 112 Mo. 45.]

In La Salle v. Kosta, 190 Ill. 130, 60 N. E. 72, it is said: "Where a master confers authority upon one of his employees to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; and all commands given by him within the scope of his authority are in law the commands of the master."

From these authorities, it is entirely clear that Akin and plaintiff were not fellow-servants at the time of the injury, but that plaintiff was a servant, and Akin a vice-principal.

The first instruction for plaintiff is also objected to on the ground that it leaves to the jury the question of Akin's authority and duty to brace the columns, which it is insisted was a question of law. This objection seems to us very technical; it does not go to the merits of the case, and is, we think, non-prejudicial. At any rate, the judgment should not be reversed upon that ground.

Said first instruction is criticised upon the further ground that it is broader than the petition, and authorizes a recovery upon a ground not alleged in the petition; that is, upon the ground that the wire columns were in a leaning condition, and thereby rendered dangerous and unsafe to work about. This we do not regard as the proper construction to be placed upon the petition. In the first place, no objection was taken to it before trial, nor afterwards by motion in arrest. Again, while the petition must be considered as inartistically drawn, and does not in so many words allege that the wire columns were in a leaning condition and were thereby rendered dangerous and unsafe to work about, it does allege that when plaintiff was ordered to work by foreman Akin on the day he was injured by the falling of the wire columns, he said to Akin: " 'I think *the wire columns ought to be braced;* they look kind of dangerous,' whereupon said foreman said to the plaintiff, 'There is no danger; just go ahead; and plaintiff, in obedience to the order and direction and relying upon the assurance of said foreman that it was safe to work at said place, undertook to perform the work as directed and ordered by said foreman of the defendant, and while engaged thereat said columns of wire fell upon, crushed and broke both legs of the plaintiff, dislocated his ankle, wrenched his knee, and otherwise bruised and injured his body. That the defendant and its said foreman knew, or by the exercise of reasonable care might have known, that said place in which plaintiff was ordered

to work was dangerous, and could have made said place a reasonably safe place to work by bracing or causing the wire columns which fell upon the plaintiff to be braced and rendered secure and safe, but negligently and carelessly failed to do so."

We have, then, the substantial allegation, though inartistically stated, that the place was dangerous because the wire columns were not braced; that a request was made by plaintiff to have them braced, and that the foreman assured plaintiff that there was no danger, and ordered him to go ahead.

The testimony of the plaintiff in explanation of the dangerous condition of the place was as follows: "I noticed them kind of lean over, and I told Billie Akin [the foreman] to get them braced; they were getting dangerous." No objection was made to this testimony. In the very nature of things, the allegation of the dangerous condition of the wire columns and of the request by plaintiff for braces or props fully notified the defendant of the negligence upon which plaintiff would rely, even though the petition did not allege in so many words that the columns were "in a leaning condition." Defendant's counsel himself asked plaintiff these questions: "Now, what were you doing when you say you noticed a column that looked as if it were tottering?" "How near to this pile were you standing when you attracted Billie's attention to it?" "What did you say to Billie?" Ans. "I said this column is looking dangerous—it ought to be braced." Q. "Did you ever notice these piles in a tottering condition before, and if so what would be done to brace them up?" Ans. "Take a block and brace them up."

This sufficiently indicates that the proof that the wire columns were tottering or leaning and that they were in a dangerous condition for want of bracing was made without objection, and the defendant was advised by the allegations of the petition that such

would be the proof. The instruction, in using the words, "If you further believe and find from the evidence that at the time of the plaintiff's injuries the wire columns were in a leaning condition and were thereby rendered dangerous and unsafe to work about," etc., merely applied the law to the concrete facts in evidence, and that evidence was within the scope of the charge of negligence in allowing the wire columns to remain in a dangerous condition for want of propping. We think, in view of the fact that the evidence was received without objection, that this instruction, when read in connection with all the others, was not such a departure from the allegations of the petition as to call for a reversal. The defendant should not be permitted to stand quietly by, make no objection to the petition, or to the admission of evidence tending to sustain its allegations and the theory upon which the instructions were given, and in this way take advantage of his adversary.

Finding no reversible error in the record, the judgment is affirmed.

All concur.