HENRY DREESSEN v. NATIONAL BUILDING MATERIAL COMPANY, Appellant.—5 S. W. (2d) 1.

Division One, April 11, 1928.

*Mosman, Rogers & Buzard* for appellant.

*E. H. Gamble* and *Edward E. Pugh, Jr.,* for respondent.

RAGLAND, J.—This is a suit by an employee against his employer to recover $10,000 for personal injuries, caused, it is alleged, by the negligence of a vice-principal. At the conclusion of plaintiff's case in chief in the circuit court, the defendant demurred to the evidence; the demurrer was sustained by the court, and a verdict directed for defendant. Subsequently the court, on plaintiff's motion, set the verdict aside and granted him a new trial. From the order granting a new trial defendant prosecutes this appeal.

Appellant in the course of its business was engaged in selling crushed stone, sand and cement. For the purpose of making deliveries of these building materials it had in use two three and one-half-ton steel motor trucks. One of these trucks was driven by an employee named Schmidt; respondent was employed to drive, and did drive, the other. At the time of the occurrences giving rise to this controversy Schmidt had been in appellant's service for a number of years; respondent had been engaged in driving one of its trucks about a year. At the time respondent was employed, appellant's president told him to follow the orders and directions given him by Schmidt. Without setting out with particularity the testimony of plaintiff in that regard, it is enough to say that it was sufficient to take to the jury the question of whether Schmidt was a vice-principal in the transaction in which he and respondent were engaged at the time the latter received his injuries.

On August 28, 1921, Schmidt and respondent set about taking off a rear wheel of the truck the latter had been driving, for the purpose of inserting a felt washer. The wheel was of steel, forty inches in diameter and weighed about eight hundred pounds. The rim was twelve inches wide, covered with a flat corrugated hard rubber tire. When removed from the truck the wheel would stand up on its rim without support, if on a level surface. Schmidt had had considerable experience in removing wheels from trucks; respondent's experience was limited to having helped Schmidt remove one on a prior occasion and in having observed such operation once or twice at the plant of the General Motors Company. On the occasion in question they put a jack under the axle or spring near the wheel to be removed, and hoisted that corner of the truck until the wheel was something over an inch above the surface of the ground; they next removed the nuts and bolts that held the wheel on the axle and cer-

tain bearings inside the hub; they then inserted under the wheel the end of a board which extended out from the side of the truck at right angles. The board was twelve inches wide and an inch thick and the upper surface was greased. After the board had been put in place they lowered the truck with the jack until the wheel, if revolved, would just clear the board. Schmidt then took a piece of timber and inserted it between the wheel and the side of the truck and by means of the leverage thus obtained endeavored to force the wheel outward to a point where it would be released from the pressure of the brake-shoes. He succeeded in moving the wheel approximately a half inch. He then told respondent to get on one side of the wheel and take hold of it near the bottom. Schmidt took a like position on the other side; they then pulled for an interval of two minutes without moving the wheel outward at all. Schmidt then said to take hold of the rim near the top; respondent said that the wheel might come off suddenly and fall on them, and suggested that "it would be a good idea to tie something around it to prevent it from falling over if it should come." But Schmidt said, no, he had taken them off before, it would be all right. Thereupon both took hold of the rim near they top, one on each side, and pulled. While they were pulling, and almost immediately after they began, the wheel was suddenly released from the bearing which was holding it, came off and toppled over, falling on respondent's left foot.

An expert testified that the method of removing the wheel employed by Schmidt was in a general way the one commonly used. He said, however, that after the nuts and bearing are removed the jack should be so adjusted that it will bear all the weight of the truck except that of the wheel; that the weight of the wheel itself should rest entirely on the greased board; that in that situation there would be no binding of the brake-shoes or anything else on the inside of the hub, and consequently that the wheel, without the use of a pry, could be slipped off easily along the surface of the greased board.

Negligence was assigned in four separate specifications in the petition. Taken together they amount to the charge that defendant was negligent: First, in failing to employ some means of keeping the wheel in an upright position when in the course of its removal it would no longer have the support of the spindle; and second, in ordering the respondent to take such position that the wheel, if it came loose suddenly, would fall on him.

The answer contained a general denial and a plea of assumption of risk. It further alleged that plaintiff's injuries were due solely to his own negligence; or, if not, then to that of a fellow-servant.

Appellant asserts that the order granting a new trial was erroneous, because it was entitled to a directed verdict as first ordered by the court. This on two grounds: First, plaintiff's evidence

wholly failed to support the charge of negligence alleged in the petition; and second, the negligence, if any, was that of plaintiff's fellow-servant.

I. Had Schmidt in removing the wheel followed in all respects the method in common use there would have been no danger of dislodging it suddenly. In other words, if he had so adjusted the jack that the weight of the wheel would have rested wholly on the board and consequently have been taken entirely off the spindle, there would have been no binding of the brake-shoes and bearings on the inside of the hub, and the wheel could have been eased along the greased board without the application of any particular amount of force. No rope, chain or other appliance would have been necessary in order to keep it in an upright position. But having elected to use force, first with a pry and then by pulling with the hands, he should in reason have anticipated that the wheel, when it did become released from the brakes or other bearings that were holding it, would come off suddenly, and because of its size and weight would bound and topple and fall, thereby endangering both himself and his helper. Respondent did anticipate such an eventuality, but yielded to Schmidt's experience and supposedly superior judgment. The dictates of ordinary prudence, therefore, required that Schmidt employ some means of keeping the movements of the wheel under control, in the event it should suddenly become disengaged; or, if he did not do that, that he at least not order respondent to take a position where he would be caught by the falling wheel, if it did fall. All of these inferences could have been properly drawn by a jury.

II. In doing the manual work of removing the wheel Schmidt and respondent were engaged in a common service. But Schmidt, pursuant to the authority conferred upon him by appellant, as plaintiff's evidence tended to show, not only determined the manner of doing the work but directed respondent to take the position in which he was when caught by the falling wheel. In doing these things Schmidt was a vice-principal. [Burkard v. Rope Co., 217 Mo. 466, 117 S. W. 35; Wagner v. Gilsonite Co., 220 S. W. 890.]

Whether Schmidt was negligent, and, if so, whether the negligent acts were committed by him in the capacity of vice-principal were questions for the jury. The circuit court therefore properly awarded a new trial. Its action in so doing is affirmed and the cause remanded. All concur.